Good morning, your honors, and may it please the court. My name is Dan Twettin. I represent the plaintiff in this matter, Dr. Rafik Benaissa, who is the appellant here and is also the relator in the case. I want to dig in to the question of presentment here, which is really where the district court below focused its dismissal order on. But before I dive into the details of that, I just want to take a moment to briefly talk about the general nature of the allegations here, which is the scheme alleged by Dr. Benaissa is that Trinity Health vastly overpaid five particular physicians, and the result of that was that these physicians made unlawful referrals to the Trinity Health system. There were some unnecessary surgeries that resulted in that Trinity Health submitted claims to the government associated with these referrals. That's the general gist of the allegations that Dr. Benaissa makes here. The district court below primarily dismissed the case because the court concluded that there were not sufficient allegations that false claims had actually been presented to the government. As this court knows from the Struby and Thayer decisions, the standard in this circuit is that in order to allege presentment sufficiently under Rule 9b, a relator needs to either provide representative examples, which we concede Dr. Benaissa did not do here. That's not within the complaint. Or provide sufficiently reliable indicia that a court can infer that claims were submitted. And that's our argument here, is that the First Amendment complaint provides sufficient allegations to allow a court to infer that claims were actually submitted. And in particular, Dr. Benaissa alleges that Trinity Health received approximately $150 million a year from Medicare, and that that constituted 28 to 29 percent of the revenues in the Trinity Health system. And I submit to this court that it would take an act of willful disbelief. Can you tell me your paragraph with your best allegation and how much they got from Medicare, Medicaid, and Tricare? Sure. Your Honor, that appears at paragraph 91, and then also at paragraphs 141 to 143 of the First Amendment complaint. All right. Given the volume of receipts that Trinity receives from Medicare... But your argument in gross is contrary to Joshi. Joshi plaintiff relied on the fact that in 16 years, they had 16 years of fraudulent transactions. Of course they had, they presented claims to the government. We said that was insufficient. Two responses to that, your Honor. One, our claim is factually different and distinct. The allegations are distinct. And also at the time Joshi was decided, this court had not decided Thayer. And so Joshi very clearly says that the complaint there fails because there were no representative examples that were pleaded. In Thayer, this court... Now wait a minute. You're saying Thayer overruled Joshi to the extent that Joshi suggested that just alleging years and years where every transaction was fraudulent is not sufficient? No, I'm not saying that. Of course, that's what you just said. And of course, that's absolutely a misinterpretation of Thayer because Thayer couldn't have ruled that. I agree with that, your Honor, and that's not what I intended to say. I did not intend to suggest that Thayer overruled Joshi. However, Thayer articulates for the first time in this court that it's not just representative examples that get the job done. It's also this concept that... Strube is what you've got to worry about. Sure. Strube applied Thayer and made it clear that, at least as I read it, Thayer is a very limited exception to the basic Rule 9b requirement of Joshi and other cases. I don't... Respectfully, your Honor, I don't believe that that's how Thayer articulates its own holding. I don't care how Thayer said it. We're applying Strube. And I don't think that that's how Strube necessarily articulates it either. Strube acknowledges what happened in Thayer was that Thayer essentially surveyed the decisions around the country. And obviously, Judge Benton is well familiar with Strube, having been the author of it. But having surveyed the decisions around the country, it concluded that there is a way to successfully meet the 9b standard that is not just representative examples. Thayer is not setting out a rule with an exception. It's saying that there are different ways to get to the same place. And to get back to your question, Judge Loken, about Joshi, there's also a factual distinction there that applies to Strube as well that's essential here, which is that in both Strube and in Joshi, the underlying theory of falsity, right, depended to some degree on what the bills actually said, what the statements to the government were. And so in Strube, the issue was that these particular breathing treatments that were being provided were being provided by people who were entitled to a higher reimbursement rate when there were individual available to provide the treatments at a lower rate. And so in order for that theory to get all the way through to prove a claim, you would need to know what the actual bill said, right, what was actually submitted to the government. Here, our theory of falsity is much more categorical in that it doesn't, you don't know about the A claim or the B claim. I'm talking about the A claim. I thought you were, yeah, well, it's not more categorical. It can't be in specific claims. It can be. I disagree with that, Your Honor, in the sense that you can make a, here we're talking about the presentment issue, right? And the question. I don't know what you mean when you say presentment. We're dealing with whether the complaint pled that there was a claim made to the government. Sure. And so, again, to get back to my point. By phone call or otherwise. Pardon me? By a phone call or otherwise. Exactly. And our allegation here is that every claim for services that's associated with a referral that came from these particular doctors is tainted because it's a violation of the Stark Statutes or the Anti-Kickback Law. That's our theory of falsity. The presentment argument is that Trinity receives so much money from the government. I understand all that. There's no specificity in it whatsoever. I don't know what it gives notice of the duty to defend would be. Respectfully, Your Honor. I'd want to know specifically what claims. Respectfully, Your Honor, Trinity does know. It's every claim that they've submitted to the government for services referred by the five doctors identified in our complaint. That's a known universe. I don't understand why this plaintiff, if he had the years of experience that we're talking about, why he couldn't make the basic allegations that Strube and Thayer and Joshi require. Well, those cases. Unless he really didn't know anything and all this is an FCA outcropping of his disagreement with his peers at the hospital. Respectfully, Your Honor, if what you're asking is why couldn't Dr. Benassa allege the actual contents of particular claims, the answer is he doesn't have access to the billing department. He was a trauma surgeon. How do we know? Well, you can say that. He didn't allege that. We certainly allege what the nature of his work was. But the complaint doesn't allege an inability to meet the fairly fundamental Dine B requirements of our precedents. It just comes up with a new theory and says, hey, this ought to be enough even though it wasn't in Joshi because now we have Thayer. It's not a requirement in this court that you plead a representative example. It's clearly what Thayer and Strube say. So Your Honor, to get back to the point I was trying to make about the difference between this case and Strube and Joshi to some degree is that those theories of falsity only succeed if you know what was actually submitted to the government. Here, the theory of falsity is that every one of these claims is tainted because they violate the Stark statutes and the anti-kickback law. But is even that alleged with specificity? It seems to me it's based on a theory that their salaries were so high, therefore it must be based on violations of these statutes. To a degree, I think I agree with you, Your Honor, in the sense that the complaint alleges that the salaries so far exceeded fair market value that the financial arrangements don't qualify for the safe harbor under either Stark or the anti-kickback law. And that's, I struggle with how that's enough. Well, I think one could look at the decisions in the Perique decision, the Fulia decision, the Rusher decision, which are all cited in our briefing. But I think it's enough because, and even the Shingle decision, which Trinity cites two repeatedly, it's enough because what Dr. Bonassa has alleged is certainly enough to establish that the compensation was well outside of fair market value. And that takes the compensation for these five individuals that are specifically identified, it takes that financial arrangement out of the safe harbor. And we provide allegations both of their salary and we provide allegations about what a benchmark is. We have a national survey regarding the benchmark salaries for these particular specialties and we're able to allege that every one of these five doctors is beyond the 90th percentile of those, and some of them are almost twice the 90th percentile. And so we have sufficiently put forth allegations to establish that theory of falsity. When you say out of the safe harbor of the statutes? Correct. Which is what? What would allow, what would be the safe harbor? What would allow them to stay there? A bona fide employment arrangement is an exception to the Stark rule and the anti-kickback law. And so you're just, it still just sounds like a very general inference. I don't think so, Your Honor. We're specifically alleging what these doctors were paid, as well as what the benchmark is for what they should have been paid, and that they were paid grossly beyond that. And even beyond, and I would also say, Your Honor, that with regard to your concern that the complaint is insufficiently precise, we also support that with very specific allegations of unnecessary surgeries, which are the logical consequence of the compensation scheme that we allege. Was that just to one doctor, though? Yes, that's as to, well, no, it's mostly just as to Dr. Joshi. There are a couple of other allegations as to the two oral surgeons as well, but primarily as to Dr. Joshi. So I see that I'm at 2.30, and I'd like to reserve a little bit of time for rebuttal. You may. Thank you. Mr. Roark? May it please the Court, Brian Roark on behalf of the Defendants Appalese Trinity Health System. Trinity is based in Minot, North Dakota, and is a three-hospital system. There are multiple fundamental deficiencies with the False Claims Act complaint in this case that warrant this Court affirming the trial court's dismissal. Counsel for Dr. Benassa focused on whether or not Dr. Benassa had sufficiently pled the submission of false claims. I'd like to turn to that first as well. I would like to note one thing that Counsel for Dr. Benassa mentioned in his comments that he left out in terms of what the standard is. He acknowledges that Dr. Benassa hasn't identified any representative examples of claims. He says, barring that, the test goes to, has he pled reliable indicia? But note that that's only part of what Thayer says. Thayer says that a relator has to couple the particular details of the fraudulent scheme with reliable indicia that gives rise to strong inference. There are two parts of that, and it's important not to gloss over the first part, that Dr. Benassa has not pled the particular details of a fraud scheme. He also has not pled reliable indicia that would give rise to the submission of false claims. In Thayer, and as Thayer was applied in Strube, the court said that to plead reliable indicia, you need either, one, access to billing systems, or two, knowledge of billing practices. And Dr. Benassa has not, in his complaint, alleged in either of those. He doesn't allege that he had access to billing systems at Trinity, but he also does not allege any facts showing that he had knowledge as to how Trinity billed claims. He doesn't allege that he conferred with anyone at Trinity about their billing processes. He doesn't allege that he reviewed any bills. He doesn't explain how Trinity submitted claims. And absent him pleading some facts that give some basis for knowledge, it's not sufficient for the court to find that there's been a strong inference that false claims were actually submitted. What he does point to is he alleges the amount of total reimbursement that Trinity receives from Medicare in a particular year. He identifies the percentage of Trinity's total revenues that come from Medicare, and then he says that the scheme affects every claim for payment, and so that should be enough. But that basically boils down to what he's alleging as well. Trinity participates in Medicare, and because they participate in Medicare, surely they would have submitted some claims to Medicare. That doesn't come anywhere close to the Thayer or Strubey standard for pleading reliable indicia. Also, his identifying the total amount of reimbursement that Trinity may have received from Medicare has nothing to do with the five physicians who he alleges in this case that Trinity overpaid. The fact that Trinity may have received $100 million or whatever the number is in total from Medicare, he does not tie that back to reimbursement that Trinity may have received for any of these five physicians, if any. One of these five physicians is an OBGYN. There's no indication that that physician even treated Medicare patients. The case that we believe is best for us on this point and the standard that we would ask this court to apply is the Thayer case, in particular, how the court distinguished the multiple schemes that the relator had pled in Thayer. The relator in Thayer was the manager of a Planned Parenthood clinic. She made allegations that the clinic itself had submitted false claims to the government. She also made allegations that patients from her clinic went and received services from hospitals and that those hospitals also submitted false claims. For the schemes that she alleged relating to Planned Parenthood clinics, even though she couldn't identify a representative example claim, the Thayer court still held that as the manager of the clinic, she had personal first-hand knowledge about the submission of claims, and based on that, the court allowed those schemes to go forward. Faith Circuit did not allow the claims to go forward on her scheme related to that hospitals may have submitted false claims because she didn't have any personal first-hand knowledge about how the hospitals submit claims. She didn't have access to the hospital's billing system. She didn't have knowledge about how the hospitals submitted claims. So how would a doctor in this situation do that who, pled or not, let's assume doesn't have access to the billing system, that structure is doing the medical side of it, how could a doctor submit enough in a complaint to meet that pleading standard? A good example of that, Your Honor, would be the Dickin, Minnesota District Court case that applied Thayer. The relator in Dickin was also a physician. The district court in that case found that the doctor had pled reliable indicia because in his complaint, he pled that he had had conversations with the office manager of the particular health care facility and that he had talked to other administrators and based on those conversations, had knowledge as to how the hospital submitted claims. So the answer would be, if a physician or whoever the relator is, isn't able to identify representative example claims, they would still have to gather some information about what the health care provider's method is for submitting claims. There's no requirement. This doesn't limit relators to only people who work in billing departments. There are other ways to get information about the submission of claims. I think it's important to... Are there cases that address the application of the Thayer standard, which I gather other courts have adopted, in a case where the government joins the suit? I'm not aware. I can't cite to the case. When the government joins the suit, as the federal government, the government obviously has access to all of the claims that a particular provider may have pled. And so just as a practical matter, in an Intervene False Claims Act case, it's much easier for the United States to satisfy the 9b pleading burden than it is for a relator. As the case law has developed, there are reasons for that. The courts have held that for a relator to come into court where they haven't suffered any injury in fact, if they're going to get to come into court and get to maintain a False Claims Act lawsuit on behalf of the government, they have to satisfy that the government has been harmed or injured in some way by identifying an example claim or pleading. I assume they have to meet the notice requirements of Rule 9b, or maybe they don't. The United States? Yes. The United States does. It has to put the defendant on fair notice. That's right. So it's not just, hey, we've got it. Here's a record showing that this entity has submitted umpteen claims. That's right. And there are numerous cases where defendants have challenged that the government hasn't adequately pled the fraud scheme, but it is easier for the government to satisfy the submission of claims requirement given that they have possession of the claims. I wanted to note for the court that it's not just Strube that has applied Thayer. If the court looks at footnote two of the Thayer decision, the Thayer court actually looked back at five previous Eighth Circuit cases to note in those five previous cases that those cases were distinguishable from Thayer because the relators in those cases didn't have access to the health care provider's billing systems and didn't have personal knowledge. And we would submit that that standard is well settled in the Eighth Circuit at this point and that the relator has not met it. I also want to address briefly the first part of this standard, that not only does Dr. Benassa not plead the submission of claims to the government, he hasn't sufficiently pled an underlying fraud scheme. Boy, he has some allegations of that. How can you say there's not a scheme? Your Honor, we say that there's not a scheme because he doesn't plead what the scheme is. He identifies five physicians, but he doesn't plead anything about why is it that these five physicians were overcompensated. Coincidentally... The health hospital, go ahead. Well, coincidentally... Higher DRGs, bigger DRGs, different DRGs. Your Honor, what I was referring more to is coincidentally, as a not-for-profit health system, Trinity is required to file an IRS form 990. And part of the 990, Trinity every year has to list its top five highest compensated physicians. So, why is it that Dr. Benassa believes just these five physicians were overcompensated? It's also not enough for him to just plead the amount of compensation that they received and to say that's higher than other physicians on average receive, without providing some more factual context, mainly, how much did these physicians work? His allegation is that Trinity was paying physicians for their referrals. I think he would acknowledge that it's perfectly fine for Trinity to pay physicians the fair market value for the services they provided. We don't know anything about what services did these doctors provide. The complaint has some very specific allegations about different procedures and where are different systems. I think that's theoretically possible. Well, just compare it to Strube. So we get off the facts here. Strube says at least it comes close to, if not satisfying, that standard. And this is better than that, isn't it? Oh, Your Honor, we would submit that this is much worse than Strube. In Strube, there were later plaid names of individuals at the health care company who directed the breathing treatments. He plaid statements, the relators plaid statements by the supervisors that changes were being made with these breathing treatments so that they could be billed at higher rates. The relators in Strube also allege that management instructed them to bill these breathing treatments for 30 minutes. Those are the facts that are lacking here as it relates to the underlying fraud scheme. We don't have any of those details. No names of anyone in hospital management involved in some scheme to overpay physicians. Not when the scheme started or when the scheme stopped. What's alleged in the complaint is that the period of liability is six years. Well, coincidentally, that also happens to be the statute of limitations under the False Claims Act. There's no indication of if there is a scheme, when did the scheme start? Did these five physicians actually even work at the hospital over this entire period of time? The complaint is lacking in those details. I'm happy to address any other questions from this court, but if there are none, what we would ask is that this court affirm dismissal of the underlying court's decision not only because it fails to plead the submission of false claims, but also because it hasn't adequately plaid any underlying fraud scheme. Thank you. Thank you. Court of Appeal. Your Honor, I want to talk briefly about the Dickin case, which counsel referred to. There, the court ultimately was satisfied that the allegations met 9B because the doctor, who was the relator, had conferred with other doctors to understand what the particular coding was that they were putting in each bill. The doctor there was able to allege, here's the ICD-9 code and the CPT code that goes into each and every bill. On the basis of that, the court said, well, that's enough. You've done enough to represent to me that you have some personal knowledge about the way that these treatments were built. But what isn't in Dickin, what the relator there did not have, was any personal knowledge about how those bills were then transmitted to the government. In that sense, it's no different than the case here. That case was not appealed, I'm assuming? That's correct, Your Honor. Thank you. Right, it's a district court decision. No, no, no. Go ahead. And so, in that sense, Dickin and this case are similar in that the relator is able to allege all of the knowledge that is required to render a bill false. And that's what the court was looking at in Dickin. Now, just briefly, counsel referred to the fact that the doctors at issue in this case, their compensation appears on the Form 990. To the extent that he's suggesting that there's some type of slippery slope argument here, some concern that just anybody could come in and make these kinds of allegations and give themselves a False Claims Act complaint, that's actually really something that is provided for in the public disclosure bar of the False Claims Act. The False Claims Act has a very specific provision that says you can't just come in and make an allegation based on things that are in the public record. You've got to have something beyond that. They have not advanced that argument in their motion to dismiss, so presumably if they had, if they thought they had, that was a legitimate argument they would have. Thank you, Your Honors. Thank you, Counselor. The case has been thoroughly briefed and well-argued, and we'll take it under advisement.